UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DEREK R.,<br><br>            Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Case No. 3:20-cv-05154-TLF<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance (DIB) and supplemental security income (SSI) benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

                      I.     ISSUES FOR REVIEW

A. Did the Administrative Law Judge ("ALJ") err in evaluating Plaintiff's subjective symptom testimony?

B. Did the ALJ err in assessing medical opinion evidence?

C. Did the ALJ err in assessing lay witness testimony?

D. Was the Plaintiff's residual functional capacity ("RFC") determination supported by substantial evidence?

## II. BACKGROUND

On October 2016, Plaintiff filed applications for DIB and SSI, alleging in both applications a disability onset date of December 31, 2013. Administrative Record (AR) 351–52, 359. Plaintiff's applications for DIB and SSI were denied upon official review and upon reconsideration. AR 201–02, 227–28. A hearing was held before ALJ Paul Gaughen on September 18, 2018. AR 160–89. On November 29, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. AR 28–51. On December 17, 2019, the Social Security Appeals Council denied Plaintiff's request for review. AR 1–7.

Plaintiff seeks judicial review of the ALJ's November 29, 2018 decision. Dkt. 4.

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## IV. DISCUSSION

In this case, the ALJ found that Plaintiff had the severe, medically determinable impairments of affective anxiety-related post-traumatic stress disorder ("PTSD"), substance addiction disorders, and a severe musculoskeletal impairment to his right hand. AR 34. Based on the limitations stemming from these impairments, the ALJ found that Plaintiff could perform a reduced range of light work. AR 37. Relying on vocational expert ("VE") testimony, the ALJ found at step four that Plaintiff could not perform his past relevant work, but could perform other light, unskilled jobs at step five of the

sequential evaluation; therefore, the ALJ determined at step five that Plaintiff was not disabled. AR 44.

## A. Whether the ALJ Erred in Assessing Plaintiff's Subjective Symptom Testimony

Plaintiff avers that the ALJ's adverse credibility finding as to his own symptom testimony was not supported by adequate reasoning. Dkt. 18, pp. 12–17.

In weighing a plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

In addition to testifying at the hearing, Plaintiff submitted function reports in November 2016 and January 2017. *See* AR 405–12, 432–39. In each report, he described "up and down" shifts in his mood from one day to the next and stated that, on some days, he was so depressed that he did not want to leave his bed, comparing this experience to "hibernating." AR 405, 412, 432. He also stated that he had difficulty in dealing with authority figures and felt "just negative towards people" in general, suffered from a stutter and frequent forgetfulness, and struggled to summon the necessary concentration or motivation to complete tasks. AR 410.

The ALJ found that Plaintiff's symptoms were less severe than he alleged, reasoning that (1) his statements were inconsistent with his activities of daily living, (2) Plaintiff sought only conservative treatment for these symptoms, and treatment mitigated his symptoms significantly, and (3) the symptoms alleged were inconsistent with objective medical evidence. AR 36–37.

With respect to the ALJ's first reason, a claimant's participation in everyday activities, indicating capacities that are *transferable to a work setting*, may constitute grounds for an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (emphasis added). Yet, disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits)).

Here, the activities listed by the ALJ included Plaintiff's participation in mixed martial arts ("MMA") cage fighting and weightlifting, part-time work, and attendance at Alcoholics Anonymous ("AA") and Narcotics Anonymous ("NA") meetings. First, the ALJ's citations to the record do not indicate either the frequency or intensity with which Plaintiff engaged in MMA cage fights or weightlifting. *See* AR 514 (documenting hand injury from MMA); 560 (stating Plaintiff had "been lifting more weights for exercise" with no indication of how frequently this took place). At the hearing, Plaintiff stated that he had taken up MMA at the encouragement of his family as a way to mitigate his anger issues, and that he broke his left hand while fighting, forcing him to quit altogether. AR 170–71.

The ALJ's citations to portions of the record documenting Plaintiff's work activities, similarly, do not support a finding that Plaintiff was able to adhere to the rigors of a full-time job. AR 41 (citing AR 518, 554, 557). Indeed, the ALJ's last citation on this topic is to a medical record indicating Plaintiff had to miss work due to severe pain. AR 564. The ALJ relied on Plaintiff's work activity to show he was not limited by his hand injury, but there is not any indication in these records as to how frequently he was required to use his right hand; indeed, at the hearing, Plaintiff testified to a work-related injury to his right hand in 2016. AR 41; *see also* AR 176. Finally, the record does not disclose the frequency with which Plaintiff attended AA or NA meetings or assumed any volunteer duties in these organizations. Without more, Plaintiff's activities are not a clear and convincing reason supporting an adverse credibility determination. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

As to the ALJ's second reason, the effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). The conservative nature of treatment can serve as a specific, legitimate reason for discounting a medical opinion when it *successfully relieves* symptoms. See 20 C.F.R. § 404.1529(c)(3)(iv) (evaluating the *effectiveness* of medication and treatment and not whether treatment is aggressive or conservative). Here, the conservative treatment as

described by the ALJ for Plaintiff's mental health symptoms included regular therapy and prescription medications—the latter including Depakote, Wellbutrin, and Seroquel; trials of hydroxyzine and clonazepam; and prazosin. AR 40. For his physical pain symptoms, Plaintiff underwent successive surgeries in his right hand and was prescribed physical therapy and narcotic pain medications. AR 40; 172. Even if these treatments could be described as conservative, new evidence submitted to the Appeals Council indicates that Plaintiff continues to present with significant anxiety symptoms and intermittent depression, and that he continues to suffer from physical pain symptoms, having fractured his hand yet again in 2019. *See* AR 52, 72, 79, 100. Accordingly, the ALJ's finding that Plaintiff's condition could be effectively managed with conservative treatment is not supported by substantial evidence.

As to the ALJ's final reason, an inconsistency with the objective evidence may serve as a clear and convincing reason for discounting a claimant's testimony. *Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But an ALJ's decision may not reject a claimant's subjective symptom testimony "solely because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

As to Plaintiff's mental health symptoms, the ALJ discussed at length mental status examination results that showed Plaintiff with normal speech, cooperative behavior, a sound attention span, appropriate thought content and thinking patterns, and "depressed although normal mood and affect," as well as physical exam results that "often do not mention any particular observed mental abnormalities." AR 40 (citing AR

535, 543, 554, 557, 560, 675, 903). The ALJ did not discuss mental status and physical exams that documented heightened anxiety and intermittent panic attacks, an affect that was fatigued, tired or agitated, and restlessness or tearfulness. *See, e.g.* AR 521, 529, 538, 540, 550, 602, 615, 617, 913–17. The ALJ discussed, in greater depth, one mental status examination purportedly from spring 2018 that showed plaintiff was able to count serial threes and sevens, memorize digit spans, sustain concentration and recall words with only one error. AR 40 (citing AR 623–33). However, this mental status examination took place in the spring of 2008, well before the alleged onset date of Plaintiff's disability, not in 2018. The ALJ addressed Plaintiff's poor performance in a September 2018 mental status exam but appeared to link it to an "episode of lightheadedness and hyperventilation" that occurred in July 2018. AR 40 (citing AR 672–76, 1204–14). The two-month gap between Plaintiff's emergency room visit and his mental status exam does not support an inference of linkage between the two.

The ALJ does not acknowledge the inherently cyclical nature of bipolar disorder. "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir.2014). The regulations themselves provide, "Proper evaluation of your impairment(s) must take into account any variations in the level of your functioning in arriving at a determination of severity over time." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00D(2). Because bipolar disorder is variable, an ALJ may not "improperly single[ ] out a few periods of temporary well-being from a sustained period of impairment" to

discredit a claimant. *Garrison*, 759 F.3d at 1018; *Reddick*, 157 F.3d at 722–23 (ALJ may not "cherry-pick" observations without considering context). When "a person who suffers from severe panic attacks, anxiety, and depression" improves, that "does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir.2001). "Occasional symptom-free periods—and even—the sporadic ability to work—are not inconsistent with disability." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir.1995). The ALJ's finding of inconsistency between Plaintiff's subjective reports and objective medical records was not supported by substantial evidence. Thus, the ALJ erred.

While the ALJ erred, the Court must determine whether this error was harmless. Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118–1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. §2111)).

In this case, the ALJ's error was not harmless. Had the ALJ properly considered Plaintiff's subjective testimony, the ALJ may have incorporated limitations related to Plaintiff's mental and physical impairments in making a determination as to Plaintiff's residual functional capacity. Had the ALJ incorporated such limitations, in turn, the

ultimate disability determination may have changed. Accordingly, the ALJ's error was not harmless and requires reversal.

### B. Whether the ALJ Erred in Evaluating Medical Opinion Evidence

Plaintiff contends that the ALJ erred in giving only "some weight" to the medical opinions of examining psychologists Tasmyn Bowes, Psy.D., William Wilkinson, Ed.D., and Terilee Wingate, Ph.D., as well as reviewing psychologist Luci Carstens, Ph.D. Dkt. 18, pp. 3–6. He also asserts that the ALJ erred in instead relying on the opinion of reviewing psychologist Matthew Comrie, Psy.D. Dkt. 18, pp. 11–12.

In assessing an acceptable medical source, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining doctor. *Lester*, 81 F.3d at 830 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining doctor's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

#### 1. Opinion of Dr. Bowes

Dr. Bowes examined Plaintiff on November 9, 2015. AR 865. She noted Plaintiff's diagnoses of major depressive disorder, PTSD, attention deficit-hyperactivity disorder, and substance use disorders that were in remission. AR 868. Performing a mental status examination, she noted Plaintiff's mood to be depressed and his affect blunted, and found his abstract thinking capability, insight, and judgment to fall outside normal limits. AR 870. Based on her examination, she went on to opine that Plaintiff would have marked limitations in the functional area of performing activities within a schedule,

maintaining regular attendance, and being punctual within customary workplace tolerances. AR 868.

She further opined that Plaintiff would be moderately limited in understanding, remembering, and persisting in tasks by following detailed instructions; in learning new tasks; in making simple work-related decisions; in asking simple questions or requesting assistance; in communicating and performing effectively in a work setting; in maintaining appropriate behavior in a work setting; in completing a normal work day or week without interruptions from psychologically based symptoms; and, finally, in setting realistic goals and planning independently. AR 868–69. Dr. Bowes also recommended that plaintiff should have a protective payee due to mismanagement of funds. AR 869.

2. <u>Opinions of Dr. Wilkinson and Dr. Carstens</u>

Dr. Wilkinson examined Plaintiff on October 17, 2016, and diagnosed Plaintiff as having an unspecified form of bipolar disorder, PTSD, and polysubstance dependence in full remission. AR 496, 498. In addition to the functional limitations that Dr. Bowes assessed, Dr. Wilkinson found that Plaintiff would be markedly limited in the area of maintaining appropriate behavior in a work setting, and would have moderate limitations in performing routine tasks without special supervision, in adapting to changes within a routine work setting, and in staying aware of normal hazards and taking appropriate precautions—three areas in which Dr. Bowes assessed Plaintiff as having only mild limitations. *See* AR 498–99, 868. Dr. Wilkinson did not recommend a protective payee. AR 499.

On October 19, 2016, Dr. Carstens reviewed Plaintiff's medical records and concurred in Dr. Wilkinson's assessment of Plaintiff's limitations – except, Dr. Carstens

opined that "a longer duration of 18-24 months should be considered". AR 508. Dr. Carstens stated that an onset date of November 9, 2015 was consistent with the clinical documentation. AR 509.

### 3. Opinion of Dr. Wingate

In September 2018, Dr. Wingate performed a functional capacity evaluation that included a clinical interview and mental status examination, making note of Plaintiff's dysphoric mood and blunted affect. AR 1208. She also noted his memory, concentration, insight, and judgment fell outside normal limits in the mental status examination. AR 1206–07. In this assessment, she diagnosed Plaintiff with PTSD, panic disorder, bipolar disorder in partial remission, attention deficit-hyperactivity disorder, and substance use disorder in remission. AR 1206. She opined that Plaintiff would have marked limitations in the areas of performing activities within a schedule, communicating and performing effectively in a work setting, maintaining appropriate behavior, and completing a normal work day or week without interruptions from his psychologically based symptoms. AR 1207.

### 4. ALJ's Weighing of the Opinions

The ALJ did not discuss the opinions of Drs. Bowes, Wilkinson, Carstens, and Wingate separately but addressed them as a whole, stating that their "general limitations indicating [Plaintiff] is restricted to unskilled work with limited social interactions is consistent with the longitudinal record," but that each of these doctors was "only able to examine [Plaintiff] on limited occasions," and that the opinions were "not consistent with the totality of the record" insofar as they "suggest[ed Plaintiff] is unable to work full time or complete a regular schedule[.]" AR 43. The ALJ thus gave

these opinions only "some weight," and opted to give great weight instead to the opinion of non-examining psychological consultant Matthew Comrie, Psy.D. AR 42–43.

Dr. Comrie reviewed Plaintiff's medical records on March 8, 2017, as part of the initial disability reconsideration process and opined Plaintiff "would have occasional difficulties in maintaining concentration, pace and persistence when symptomatic," but would be "capable of simple and well-learned detailed tasks [with] reasonable [concentration, persistence, and pace], attending work within customary tolerances, working [within] a routine, and completing a normal workday/week." AR 240. As for social functioning, he wrote that Plaintiff could occasionally collaborate with coworkers but should not be expected to interact with the general public. AR 241, 244. Dr. Comrie did not find Plaintiff to have any memory limitations. AR 240. Finally, with regard to adaptation capacities, he wrote that Plaintiff would be able to adjust to changes with sufficient notice and "be able to set goals and make plans for simple and familiar detailed tasks." AR 241. He also found that Plaintiff could perform unskilled work, but "is not capable of public contact". AR 244.

An ALJ is not required to give reasons for crediting, as opposed to rejecting, medical opinion evidence. *Howard v. Barnhart*, 341 F.3d 1393, 1395 (9th Cir. 1984). However, an ALJ is required to give specific and legitimate reasons, based on substantial evidence in the record, when they reject the opinion of a treating or examining physician based in part on the testimony of a non-examining medical advisor. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

With respect to the ALJ's first reason, Drs. Bowes, Wilkinson, and Wingate each performed a one-time examination of Plaintiff. This would be a valid reason to give less

weight to these doctors' opinions as compared to opinions of a treating psychologist, but "it is not a reason to give preference to the opinion of a doctor who has *never* examined the claimant." *Lester*, 81 F.3d at 832. The ALJ erred in relying on this reason.

With respect to the ALJ's second reason, a conflict between treatment notes and an examining physician's opinions may constitute an adequate reason to discount the opinions of an examining physician. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject treating physician's opinion). Yet ALJs may not "cherry-pick" evidence from the record to support their findings. *See Holohan*, 246 F.3d at 1207 (finding that the ALJ erred by selectively picking some entries in the record while ignoring others).

As discussed above, *supra* Section IV. A., the ALJ relied to a great extent on treatment notes and examination findings tending to indicate Plaintiff's symptoms were manageable; in so doing, the ALJ ignored or minimized extensive medical evidence indicating a contrary conclusion. This is not a specific and legitimate reason to reject the examining psychologists', or Dr. Carstens' analysis, and it is particularly problematic with regard to Plaintiff's mental health symptoms due to the cyclical nature of bipolar disorder. Just as the ALJ erred in rejecting Plaintiff's testimony on this basis, so, too, did the ALJ err in giving less weight to the opinions of examining and reviewing doctors on this basis.

C. <u>Whether the ALJ Erred in Assessing Lay Witness Statements</u>

Next, Plaintiff asserts that the ALJ erred in evaluating third party function reports from his mother, Yvette Brooks, and his partner, Samantha Robson. Dkt. 18, pp. 17–18.

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Yvette Brooks completed a third-party function report in March 2017 and another, shorter lay witness questionnaire in September 2018. AR 440–46, 471–74. In her 2017 report, she seconded many of Plaintiff's statements regarding his up-and-down moods, difficulties with social functioning, and inability to concentrate, while adding that Plaintiff "always thinks he's going to die and thinks there's something wrong with himself." AR 446. She observed that Seroquel caused side effects, making Plaintiff drowsy and sleepy. AR 447.

In her 2018 questionnaire, she added that standing and walking was not an issue for Plaintiff, but that sitting was, because he would become very restless. She stated that she bought groceries for Plaintiff because he was unable to concentrate, and reiterated that he had little to no social life because he "always wants to be in charge or he gets angry." AR 473. Finally, Brooks noted that Plaintiff's hand alternated between severe pain and numbness after surgery, causing him to be unable to hold items. AR 471.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 14

Samantha Robson also completed a lay witness questionnaire in September 2018. She stated that Plaintiff's constant nervousness sometimes causes him to shake and causes "shakiness even in his voice when he speaks." She also noted Plaintiff's severe mood swings, that he often forgets what he just said and repeats himself, and he is obsessively clean and concerned with doing tasks in a particular order.  She stated that Plaintiff's hand pain afflicted him day and night and prevented him from enjoying painting, a previous hobby. AR 477–78.

In discussing these statements, the ALJ found that Brooks's and Robson's observations "mirror[ed]" Plaintiff's testimony and were inconsistent with medical evidence indicating Plaintiff's hand surgery was successful and his other physical and mental symptoms were successfully managed with therapy. AR 38.

The ALJ's reasons for rejecting the testimony of these lay witnesses weresubstantially the same as those given for rejecting Plaintiff's symptom testimony. As discussed above, *supra* Section IV. A., these reasons were not  supported by substantial evidence.In rejecting the lay witness statements by relying on an incomplete discussion of the medical evidence, the ALJ erred by failing to give reasons germane to each witness for doing so.

D.  <u>Whether the ALJ's RFC Determination is Supported by Substantial Evidence</u>

Plaintiff argues the ALJ erred in formulating the RFC and in making his step five findings. Dkt. 19, pp. 17–18. Plaintiff argues, among other things, the RFC was incomplete because the ALJ failed to properly evaluate and include all limitations from Plaintiff's symptom testimony, the medical opinion evidence, and the lay witness evidence. Because the Court has found in Plaintiff's favor on several  issues raised

regarding lack of substantial evidence concerning the ALJ's reasons for rejecting the psychological evidence from examining psychologists and from Dr. Carstens, Plaintiff's argument concerning the RFC succeeds. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040–41 (9th Cir. 2007) (holding ALJ's RFC assessment and step five determination were not supported by substantial evidence where the ALJ's RFC and hypotheticals to vocational expert failed to include all of the claimant's impairments)

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred when he determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore REVERSED and this matter is REMANDED for further administrative proceedings. The ALJ is directed to hold a new hearing and give Plaintiff the opportunity to provide additional evidence; re-evaluate Plaintiff's symptom testimony, all medical opinion evidence, and lay witness testimony, as well as any new evidence produced after the date of the last hearing.

Dated this 7th day of May, 2021.

Theresa L. Fricke
United States Magistrate Judge